Frederick O. **LOHRMANN**, Appellant,

v.

**PITTSBURGH CORNING CORP.**, a Pennsylvania Corporation; Celotex Corporation, a Delaware Corporation; Keene Corporation; G.A.F. Corporation, a Delaware Corporation; Eagle-Picher Industries, Inc., an Ohio Corporation; Raybestos-Manhattan, Inc., a New Jersey Corporation and A.C. and S., Inc., formerly known as Armstrong Contracting and Supply Corporation, a Delaware Corporation, Appellees,

and

Johns-Manville Corporation, a New York Corporation; Johns-Manville Sales Corporation, a Delaware Corporation; Unarco Industries, Inc., formerly known as Union Asbestos & Rubber Company, an Illinois Corporation; Owens-Corning Fiberglass Corporation, a Delaware Corporation; Owens-Illinois, Inc., an Ohio Corporation; Owens-Illinois Glass Company, an Ohio Corporation; Forty-Eight Insulation, Inc., an Illinois Corporation; Amchem Products, Inc., a Pennsylvania Corporation; Nicolet Industries, Inc., a Pennsylvania Corporation; Southern Textile Corporation, formerly known as Southern Asbestos Corporation, a Delaware Corporation; H.K. Porter Company, Inc., a Delaware Corporation; Amatex Corporation, formerly known as American Asbestos Textile Corporation, a Pennsylvania Corporation; Armstrong Cork Company, a Delaware Corporation, Defendants.

No. 84–1323.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1985.

Decided Jan. 30, 1986.

---

Donald I. Marlin, New York City (Stanley J. Levy, Levy, Phillips & Konigsberg, New York City, Carl E. Tuerk, Jr., Cooper, Beckman & Tuerk, Harry Goldman, Jr., Goldman & Skeen, Baltimore, Md., on brief), for appellant.

F. Ford Loker, Baltimore, Md. (Niles, Barton & Wilmer, Baltimore, Md., on brief), Stephen J. Sfekas, Baltimore, Md. (Ruth Newman Fahrmeier, Tydings & Rosenberg, E. Dale Adkins, III, M. Bradley Hallwig, Anderson, Coe & King, Baltimore, Md., William R. Spellbring, Jr., Samuel J. DeBlasis, II, O'Malley, Miles, McCarthy & Harrell, Upper Marlboro, Md., Michael B. Mann, Dennis C. Whelley, Merriman & Mann, P.A., Richard R. Jackson, Jr., Robert L. Ehrlich, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for appellees.

Before HALL and CHAPMAN, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Appellant was a pipefitter from 1940 to 1979 at Bethlehem Steel Corporation's Key Highway shipyard in Baltimore. He claims that he now has asbestosis resulting from exposure to various asbestos-containing products of nineteen named defendants. Prior to trial, three of the defendants were severed due to being under the jurisdiction of United States bankruptcy courts. Other defendants either settled or made successful motions for summary judgment until only seven remained: Raymark Industries, Inc., Celotex Corporation, Pittsburgh Corning Corp., Keene Corporation, Eagle-Picher Industries, Inc., G.A.F. Corporation and A.C. & S., Inc. At the conclusion of plaintiff's case in chief, the trial judge directed verdicts in favor of Raymark, Celotex and Pittsburgh Corning. At the conclusion of the trial, the jury found in favor of the remaining four defendants. Appellant now claims error of the district court in certain evidentiary rulings, in certain of its jury instructions, and in the standard used by the court in granting verdicts to the three defendants. We affirm.

I

Lohrmann was born in 1919 and worked as a pipefitter at Key Highway Ship Yard for thirty-nine years. He claims that he was exposed to asbestos dust from insulating materials throughout his employment. He admitted that he had smoked and inhaled unfiltered cigarettes since 1940 and was still doing so against the advice of his physician. He retired in 1979, and at that time his personal physician found that he was disabled as a result of chronic obstructive pulmonary disease, but this physician did not diagnose asbestosis. Later, another doctor gave the diagnosis of asbestosis, and this diagnosis was an issue of dispute between the experts at trial.

Plaintiff pursued two theories of liability: negligence and strict liability in tort. He contended that the product was defective and unreasonably dangerous because of the absence of adequate warnings that exposure to asbestos dust was dangerous and could produce asbestosis and other related diseases. In the negligence claim he asserted that in addition to the failure to warn, the defendants failed to test the product and failed to develop a safe substitute for asbestos.

The trial followed the usual course of the plaintiff attempting to prove contact with asbestos-containing products of all defendants. There were the medical witnesses, those who had actually examined and treated Lohrmann and those who testified as to the state of the art—what and when doc-

tors, mine owners, and manufacturers knew or should have known about the dangers of asbestos, not only to persons working in mines and manufacturing plants, but also to those coming in contact with the product, such as insulators, pipefitters, and others working in close proximity to the installation or removal of asbestos-containing products. At the conclusion of the plaintiff's case, the trial judge directed verdicts in favor of Raymark Industries, Inc., Celotex Corporation, and Pittsburgh Corning Corp. This left Keene Corporation, Eagle-Picher Industries, Inc., G.A.F. Corporation, and A.C. & S, Inc., as the four defendants remaining of the original nineteen. These four defendants contended that Lohrmann did not have asbestosis, but had emphysema, chronic bronchitis, and shortness of breath due to cigarette smoking. They also presented witnesses on the state of the art and on when manufacturers first became aware of the potential harm to men working in trades outside the mining and manufacturing of asbestos products.

## SUMNER SIMPSON PAPERS

Sumner Simpson was President of Raybestos Manhattan from 1929 to 1948 and was Chairman of the Board of that corporation from 1945 until his death in 1953. Raybestos Manhattan has since become Raymark. During his years as President and later as Chairman of the Board of Raybestos Manhattan, Mr. Simpson kept various letters, newspaper clippings, articles from publications, correspondence, and other documents relating to the health hazards of asbestos to workers in the mining and manufacture of asbestos products. These documents were found in a box in a storage area at Raybestos Manhattan in the early 1970s, and an additional group of papers, consisting of approximately 600 documents, were found in an old safe at the Raybestos Manhattan plant in North Charleston, South Carolina, in 1979. There are approximately 6,000 documents included in the Sumner Simpson papers. The papers were produced through discovery proceedings in an early asbestosis case,

and since then the admissibility of various documents included in the Sumner Simpson papers has become an issue in the continuing asbestosis litigation.

In the present action the plaintiff offered a number of Sumner Simpson documents against defendant Raymark and on the issues of Raymark's knowledge of asbestos hazards and the proper standard of care to be exercised by Raymark in view of its knowledge. The documents were not introduced against the other six defendants. The trial judge excluded these documents as being irrelevant. Appellant claims error in this ruling and relies primarily upon *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314 (5th Cir.1985) (en banc.) In *Jackson* the trial judge had admitted three of the Sumner Simpson papers against the defendants Johns-Manville and Raybestos Manhattan to show that they knew or should have known of the dangers of asbestos products to shipyard workers during the time covered by the letters and the time during which the plaintiff Jackson was employed. The Fifth Circuit found that the trial judge had not abused his discretion in admitting the three letters under the facts in that case. However, we are faced with a different factual picture. Johns-Manville is not a party in the present action, and the trial judge granted a directed verdict to Raymark because the plaintiff failed to prove contact with Raymark products. What Raymark's predecessor (Raybestos Manhattan) knew or should have known about the dangers of asbestos to workers other than asbestos mining and manufacturing employees is irrelevant if the plaintiff did not come in contact with Raymark asbestos products, and the trial judge did not err in excluding the proffered documents from the Sumner Simpson papers. The question of what the asbestos manufacturers knew and when they knew it was presented in great detail by experts produced by all parties on the issue of the development of scientific and medical knowledge concerning asbestos hazards to workers outside the asbestos industry, so this evi-

dence was extensively developed without the use of the Sumner Simpson papers.

## REFERENCES TO CANCER

■ Appellant contends that the trial judge erred in limiting the references that could be made to the risk of cancer sustained by workers exposed to asbestos and to the various forms of cancer that have been linked to asbestos exposure. Lohrmann claims that references to and evidence of cancer risks were admissible to measure the reasonableness of the defendants' conduct given the increased risk, to measure the defendant's duty to warn, and to determine the duty to test. He also asserts that the cancer evidence was admissible on the issue of damages under Maryland law.

It is obvious from the record in this case that the plaintiff attempted at every opportunity with almost every witness to interject cancer into the case, even though Lohrmann did not have cancer and plaintiff's medical expert indicated that he could not testify with a reasonable degree of medical certainty that Lohrmann was likely to develop cancer from his exposure to asbestos. The district judge did a commendable job in preventing this asbestos case from being overshadowed by the dread specter of cancer. Lohrmann was allowed to testify that he was afraid that he might develop cancer, and cancer was mentioned by other witnesses, but it was not allowed to become a prominent issue.

Appellant again relies upon *Jackson v. Johns-Manville Sales Corp., supra,* but the *Jackson* facts are different. In *Jackson* three of the expert witnesses testified that based upon his medical records and history of asbestos exposure, Jackson had a greater than fifty-percent chance of contracting asbestos related cancer in the future. The experts in the present case have placed the risk of Lohrmann developing such asbestos-related cancer at below fifty percent. This issue has recently been considered in *Pierce v. Johns Manville Sales Corp.,* 296 Md. 656, 464 A.2d 1020 (1983), in which the court stated:

In Maryland, recovery of damages based on future consequences of an injury may be had only if such consequences are reasonably probable or reasonably certain. Such damages cannot be recovered if future consequences are "mere possibilities." Probability exists when there is more evidence in favor of a proposition than against it (a greater than 50% chance that a future consequence will occur). Mere possibility exists when the evidence is anything less. *Davidson v. Miller,* 276 Md. 54, 62, 344 A.2d 422, 427–28 (1975).

*Id.* at 666, 464 A.2d at 1026.

In *Jackson v. Johns-Manville Sales Corp., supra,* the court admitted the cancer evidence on the issue of damages, but found that if the cancer evidence had been admitted only on the issue of liability, the danger of unfair prejudice outweighed its probative value, and it should have been excluded under Federal Rule of Evidence 403. We find that a proper weighing of the cancer evidence on the issue of liability was made in the present case, and this justified the exclusion under Rule 403. Maryland law is clear that such evidence is not admissible to prove damages where there is less than a reasonable probability that the cancer will develop.

## GAZE DEPOSITION

■ Richard Gaze was deposed in 1975 in two actions brought by former Pittsburgh Corning employees who had worked at its Tyler, Texas, plant. These actions were against Gaze's employer Cape Asbestos Company and involved the claim that Cape Asbestos had failed to protect the two employees of Pittsburgh Corning from the hazardous effects of raw asbestos sold by Cape Asbestos to Pittsburgh Corning. Gaze is deceased and was, therefore, unavailable to testify at the trial of the present action. The deposition was offered against Pittsburgh Corning only, but the trial judge granted a motion *in limine* and the deposition was not admitted.

Federal Rule of Evidence 804(b)(1) provides:

**(b)** *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

At the time Gaze was deposed, Pittsburgh Corning did not have the same motive to develop the testimony on cross examination as it had in the present action, and therefore the deposition was properly excluded. In the prior action there was a claim of the hazardous effects of raw asbestos upon the health of plant workers exposed to the raw asbestos in a manufacturing environment. In the present case, the plaintiff is not a plant worker, but a pipefitter, who from time to time worked in close proximity to insulators and others using products containing asbestos after it had been processed. The state of the art as it relates to the health of persons exposed to asbestos products differs considerably for asbestos plant workers dealing with raw asbestos and for persons working in the vicinity of asbestos products. The cross examination of Gaze did not develop this distinction because such distinction was not relevant to the Tyler, Texas, cases, and the district judge was correct in refusing to admit the deposition.

## WORKMEN'S COMPENSATION FILES

■ On the issue of notice to the defendants that insulators were at risk of contracting asbestosis from their contact with defendants' asbestos-containing products, appellant sought to introduce various workmen's compensation files covering claims by contract unit insulation workers who had worked for different defendants. This evidence was rejected by the court, which found persuasive the reasoning of the court in *In Re Related Asbestos Cases,* 543 F.Supp. 1152 (N.D.Cal.1982), which stated:

Although the workers' compensation documents are relevant to the question of notice, it is decided to exclude them, as well as any summaries of them, from the plaintiffs' cases in chief. It is not clear whether each action was settled or adjudicated, and whether, if settled, an action was merely settled for its nuisance value. These questions suggest that admitting the records may pose serious policy concerns. Moreover, the voluminous documents present innumerable collateral issues. The defendants would undoubtedly pursue such issues in detail on cross-examination. The remoteness in time of many of the actions, as well as the multiplicity of jurisdictions in which the actions occurred, insure that such an exercise would not serve to enlighten the jury as to the central issues of the case, but, instead, would cause unnecessary confusion and undue delay.

*Id.* at 1156.

The trial judge in the present case allowed testimony of workmen's compensation claims filed by insulators and the defendants' knowledge that such claims were being filed. The judge also allowed letters indicating that claims were being filed by insulators claiming asbestosis, stating that such evidence was relevant on the issue of notice. What the judge refused to admit were the workmen's compensation files themselves to prove notice to the manufacturer. It was not necessary to introduce the individual files of the workers claiming asbestosis; it was sufficient to prove that the manufacturers knew of these claims. It was no abuse of discretion for the trial court to exclude the files of the individual claims, since they would have added little on the issue of notice.

## DIRECTED VERDICTS AS TO RAYMARK, PITTSBURGH CORNING, AND CELOTEX

■ At the close of appellant's case, the district court directed a verdict in favor of Raymark, Pittsburgh Corning, and Celotex,

and ruled as a matter of law that there was insufficient evidence to show the necessary element of causation between use of their products and Lohrmann's claim of asbestosis.

To establish proximate causation in Maryland, the plaintiff must introduce evidence which allows the jury to reasonably conclude that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. *Robin Express Transfer, Inc. v. Canton R.R.*, 26 Md.App. 321, 338 A.2d 335, 343 (1975). This is the standard set forth in the Restatement (Second) of Torts § 431, which provides:

> Section 431. What constitutes Legal Cause.
>
> The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Comment (a) to § 431 provides:

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense" which includes everyone of the great number of events without which any happening would not have occurred.

As asbestosis litigation has developed over the past decade, most plaintiffs sue every known manufacturer of asbestos products, and during the course of discovery some of the defendants are dismissed on motions for summary judgment because there has been no evidence of any contact with any of such defendants' asbestos-containing products. Other defendants may be required to go to trial but succeed at the directed verdict stage. Some defendants settle prior to trial, and these are usually the defendants whose products have been most frequently identified by the plaintiff and his witnesses as having been used by the plaintiff or by others in his presence or working near him.

The present case is typical of this pattern. There were originally nineteen defendants: three are in bankruptcy, nine either settled or were successful with a summary judgment motion, and seven went to trial. Three of this group made successful motions for summary judgment, leaving four defendants to await the jury verdict.

Appellants would have us adopt a rule that if the plaintiff can present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace, a jury question has been established as to whether that product contributed as a proximate cause to the plaintiff's disease. Such a rule would be contrary to the Maryland law of substantial causation. In dealing with a workplace as large as a shipyard, certain of the district judges in Maryland have adopted a standard for evaluating the sufficiency of the evidence of exposure. This rule was employed by the district judge and provides: "Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment under such a theory would depend upon the frequency of the use of the product and the regularity or extent of the plaintiff's employment in proximity thereto." In effect, this is a *de minimis* rule since a plaintiff must prove more than a casual or minimum contact with the product. This is a reasonable rule when one considers the Maryland law of substantial causation and the unusual nature of the asbestosis disease process, which can take years of exposure to produce the disease. Also, when one considers the size of a workplace such as Key Highway Shipyard, the mere proof that the plaintiff and a certain asbestos product are at the shipyard at the same time, without more, does not prove exposure to that product.

To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis

over some extended period of time in proximity to where the plaintiff actually worked. Such a rule is in keeping with the opinion of the plaintiff's medical expert who testified that even thirty days exposure, more or less, was insignificant as a causal factor in producing the plaintiff's disease.

Plaintiff relies upon *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), to support his claim that if a victim was exposed to the products of more than one manufacturer, each manufacturer was jointly and severally liable. However, in *Borel* the court found that the plaintiff was exposed to the products of all of the defendants on many occasions. We have spoken to the question of the sufficiency of circumstantial evidence required to support a finding of causal connection and have concluded that there must be evidence of a reasonable and rational nature upon which a jury can make the necessary inference that there is a causal connection between a defendant's action and a plaintiff's injury. In *Ford Motor Co. v. McDavid*, 259 F.2d 261 (4th Cir.1958), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958), the court, in vacating a jury verdict based upon circumstantial evidence of causation, stated:

> The old notion that a jury should not be allowed to draw any inference from circumstantial evidence, if the one is as probable as the other, has fallen into discard and has been replaced by the more sensible rule that it is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

259 F.2d at 266. In the present action the trial court found that the plaintiff had not proved a reasonable probability of causation between the plaintiff's disease and the products manufactured by Raymark, Celo-tex, and Pittsburgh Corning. We conclude that the trial judge was correct in this ruling, and his use of the "frequency, regularity and proximity test" was appropriate in determining whether the inferences raised by the testimony were within the range of reasonable probability so as to connect a defendant's product to the plaintiff's disease process.

In *Lovelace v. Sherwin-Williams*, 681 F.2d 230 (4th Cir.1982), we discussed the quantum of circumstantial evidence necessary to allow a finding of causal connection and held that permissible inferences must be within the range of reasonable probability. *See* 681 F.2d at 241. The "frequency, regularity and proximity test" used by the district court is an application of this principle in an asbestosis setting.

There was no testimony that Lohrmann had been exposed to any Raymark products. There were four invoices in evidence showing that Bethlehem Steel had purchased certain Raymark products, but there was no evidence to show when or where these products were used. Raymark manufactured asbestos cloth, and the plaintiff testified that the asbestos cloth to which he was exposed was manufactured by Armstrong and Johns-Manville.

The plaintiff worked for thirty-nine years at the Key Highway Shipyard and testified that he was exposed on an almost daily basis to asbestos products. However, he testified that he was exposed to an asbestos-containing pipe covering called Unibestos on ten to fifteen occasions of between one and eight hours duration during the term of his employment. Prior to July 1, 1962, Unibestos was manufactured by Unarco Industries, which is now in federal bankruptcy under Chapter 11. From July 1, 1962, to February 1, 1972, Pittsburgh Corning manufactured Unibestos. The trial court correctly ruled that, viewing the evidence in the light most favorable to the plaintiff, his exposure to Unibestos was not sufficient to raise a permissible inference that such exposure was a substantial factor in the development of his asbestosis.

Celotex was the successor to Philip Carey Corporation. There was evidence that Carey or Celotex products were at the shipyard between 1960 and 1970, but there was no testimony as to the nature of these products or the times they were on the shipyard or their locations, and there was no testimony that the plaintiff was exposed to any of these products. Lohrmann, who testified as to his personal knowledge, identified various asbestos-containing products and his exposure to them, but he did not claim any exposure to Carey or Celotex products. The evidence presented as to Celotex was not sufficient to show any contact or to raise any inference that the plaintiff was ever exposed to a Celotex product.

## JURY CHARGE

Appellant claims error in the jury charge because (1) the charge on strict liability in tort included a charge on state of the art, (2) the charge included language as to the actual knowledge possessed by the defendant or discoverability, (3) the charge on strict liability included references to the defendant's reasonableness, and (4) the court refused thirty-seven of the plaintiff's requests to charge.

On review we must consider the charge as a whole. A district judge has broad discretion in framing his jury instructions. If the instructions correctly state the law and adequately cover the issues in the case, the charge is sufficient. *Chavis v. Finnlines, Ltd., O/Y*, 576 F.2d 1072 (4th Cir. 1978). In reviewing the entire charge, we find that it correctly instructed the jury on the Maryland law applicable to this case.

Appellant contends that state of the art is irrelevant in a strict liability case and cites *Banks v. Iron Hustler Corp.*, 59 Md. App. 408, 475 A.2d 1243 (1984). The statement in *Banks* refers to industry standards and compliance with industry standards. *See* 475 A.2d at 1253. Industry standards and state of the art are not synonymous. State of the art includes all of the available knowledge on a subject at a given time, and this includes scientific, medical, engi-

neering, and any other knowledge that may be available. State of the art includes the element of time: What is known and when was this knowledge available.

Industry standards are the practices common to a given industry. They are often set forth in some type of code, such as a building code or electrical code, or they may be adopted by the trade organization of a given industry. State of the art is a higher standard because scientific knowledge expands much more rapidly than industry can assimilate the knowledge and adopt it as a standard.

State of the art in the present case would determine the manufacturer's duty to warn of the danger of asbestos to persons such as Lohrmann, who did not work directly with asbestos, but worked in close proximity to insulators using asbestos-containing products. The question was when the state of the art included knowledge that people such as Lohrmann were at risk because they were working near insulators and others using asbestos-containing products. There were many state-of-the-art witnesses called, and each tried to answer the question of what was known and when was it known.

It appears that in Maryland, state of the art can be considered in a strict liability tort case where the claimed defect is a failure to warn. In *Phipps v. General Motors Corporation*, 278 Md. 337, 363 A.2d 955 (1976), the court adopted strict liability in tort as expressed in § 402A of the Restatement (Second) of Torts, but the court stated: "Despite the use of the term 'strict liability' the seller is not an insurer, as absolute liability is not imposed on the seller for any injury resulting from the use of his product." 363 A.2d at 963.

Official Comment (j) to § 402A provides:

*Direction or Warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs

or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.

This comment is particularly pertinent to asbestosis, since some people exposed to asbestos dust develop the disease and others similarly exposed do not. The language of Comment (j) is state-of-the-art language because it requires the seller to give a warning if he has knowledge, "or by the application of reasonable, developed human skill and foresight should have knowledge" of the danger. The charge advised the jury to measure the defendant's conduct in the light of scientific and medical knowledge existing at the time the product was manufactured. The defendants were also charged with responsibility for what they should have known about asbestos and what was foreseeable.

■ Appellant contends that the trial judge should have charged on the flexible nature of the duty to exercise due care, and contends that whether conduct is unreasonable turns principally upon the nature and seriousness of the injury that is foreseeable and the likelihood that injury will result. He cites *Moran v. Faberge, Inc.* 273 Md. 538, 332 A.2d 11 (1975), for the proposition that the degree of vigilance required increases with the degree of danger. Considering the charge as a whole, we find that the judge properly instructed on the degree of care required in this case and that his refusal to charge the plaintiff's request on a varying standard comparing the risk with the possible danger was not error.

■ Appellant also contends it was error not to charge that the defendants were under a duty to test their products. This is adequately covered by the instruction explaining "an unreasonably dangerous product".

■ Appellant also faults the charge for references to reasonableness during the charge of strict liability. In *Troja v. Black & Decker Mfg. Co.*, 62 Md.App. 101, 488 A.2d 516 (1985), the Maryland court used reasonableness at the time of manufacture as the test in a strict liability case brought under § 402A of Restatement (Second) of Torts (1965). Reasonableness is also used in certain of the official comments to § 402A. We have considered the charge as a whole and find no error in it.

AFFIRMED.