**William E. FARRALL, et al., Plaintiffs,**

**v.**

**A.C. & S. CO., INC., et al., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 2, 1988.
Decided: Jan. 9, 1989.

Robert Jacobs of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

Paul A. Bradley of McCarter & English, Wilmington, for defendants.

TAYLOR, Judge.

Defendants' have filed a motion *in limine* to bar certain witnesses which plaintiffs propose to have testify.

## I. DR. JOSEPH WAGONER

Defendants contend that Dr. Joseph Wagoner should not be permitted to testify with respect to plaintiffs' fear of cancer. Their first contention is that no expert should be permitted to testify about such fear because this is a subjective matter known only to a plaintiff and those to whom he has spoken on that subject. Applying that position to Dr. Wagoner, they point out that he has never talked to plaintiffs.

Dr. Wagoner has never testified in this Court with respect to any plaintiff's condition nor has he testified concerning fear which a plaintiff has or the reasonableness of such fear. *Cf. Lee v. A.C. & S. Co., Inc.,* Del.Super., 542 A.2d 352 (1987). He has been permitted to give statistical information concerning disease and death causation as an aid to medical testimony after the foundation has been laid by medical testimony that such statistical information is relied upon by the medical profession in reaching opinions. *Id.* at 356. If it is anticipated that plaintiffs will seek to elicit this information at the next trial in conjunction with medical testimony, the Court would follow its practice of giving a clarifying instruction such as has been used in the past (if requested by defendants), namely:

> Testimony has been given and will hereafter be given regarding possible increased risks of cancer for individuals with asbestos-related diseases. This testimony is admitted in this case only in connection with plaintiffs' claims based upon alleged fear of developing cancer. None of the plaintiffs claim that they have cancer. There is no claim that plaintiffs will develop cancer. If a plain-

tiff ever develops cancer which he contends is caused by asbestos, he can file a new lawsuit. Testimony regarding risks of cancer is to be considered by you solely in deciding whether a plaintiff's claimed fear of developing cancer, if any such fear exists, is reasonable.

■■■ Defendants make two contentions in this submission which would be applicable to any testimony by any witness other than a plaintiff. The first is that no expert should be permitted to testify to the reasonableness of a plaintiff's fear and the other is that there should be no recovery for fear of cancer unless there is testimony that a plaintiff has a greater than fifty percent likelihood of developing cancer.

The first contention rests on the proposition that since a plaintiff is permitted to testify about his fear of cancer, no one else can testify on that subject. This contention overlooks the modern approach to evidence. Rule 702 of the Delaware Uniform Rules of Evidence permits expert testimony which "will assist the trier of fact to understand the evidence or to determine a fact in issue".

Defendants cite *Devlin v. Johns–Manville Corp.*, Law Div., 202 N.J.Super. 556, 495 A.2d 495 (1985) as their supporting authority. *Devlin* considered "whether or not an expert will be needed to testify" concerning fear of cancer. It held that expert testimony would not be required, but it did not hold that expert testimony would be excluded.

I find no reason to bar testimony which would support or refute the reasonableness of the fear which a plaintiff has testified to, recognizing that plaintiff must convince the jury that his expressed fear is a reasonable fear.

Defendants' remaining contention is that there can be no recovery for fear of a disease which plaintiff has less than a fifty-one percent likelihood of contracting. Their chief support for that proposition is *Lohrmann v. Pittsburgh Corning Corp.*, 4th Cir., 782 F.2d 1156 (1986). *Lohrmann* does not support defendants' contention. In *Lohrmann* the issue which the District Court excluded was plaintiff's claim for risk of contracting cancer. In the present case plaintiffs are not claiming for risk of cancer but only for their present fear of getting cancer. The following excerpt demonstrates that *Lohrmann* does not depart materially from the practice in this Court:

Lohrmann was allowed to testify that he was afraid that he might develop cancer, and cancer was mentioned by other witnesses, but it was not allowed to become a prominent issue.

*Lohrmann,* 782 F.2d at 1160.

*Lohrmann* makes clear that its holding with respect to the fifty-one percent requirement applies only to risk of future cancer by the following quotation from *Pierce v. Johns Manville Sales Corp.,* 296 Md. 656, 464 A.2d 1020, 1026 (1983):

In Maryland, recovery of damages based on future consequences of an injury may be had only if such consequences are reasonably probable or reasonably certain.

Under Delaware law, the fifty-one percent test would entitle the claimant to recover for the probability that the plaintiff would contract cancer and not merely for the fear. The claim based on fear of cancer deals with fear growing out of a past and present condition but it does not deal with a condition which is likely to develop in the future, as is referred to in *Lohrmann* and *Pierce.*

Finally, defendants cite *In re Moorenovich,* D.Me., 634 F.Supp. 634 (1986) for the proposition that where recovery for a fear of cancer claim is permitted, the court should "be wary of any efforts to 'overshadow' the case by the 'dread spector of cancer'." This Court concurs in that approach, and to that end has utilized the cautionary instruction to the jury which has been quoted earlier in this decision. It is noted that the court in *Moorenovich* described the issue which it was considering as follows:

Plaintiffs are seeking damages for a "present" injury. That is, the present anxiety or fear they experience that they will contract cancer in the future. This fear derives from the fact that asbestos is a known carcinogen, that they have

had prolonged exposure to asbestos, and that their co-workers are dying at a higher than normal rate from asbestos-related cancer.

*Id.* at 636. It is clear that the court in *Moorenovich* considered that the fact that workers exposed to asbestos were dying from cancer at a higher rate than other workers was a significant factor in the fear claim and, hence, would be testified about.

This Court has consistently held in each trial where a claim for fear of cancer has been involved that evidence of the increased likelihood of cancer would assist the jury in determining whether a plaintiff's fear of cancer is a reasonable fear. *Cf.* Rule 702, Delaware Uniform Rules of Evidence.

Defendants also contend that since the fear must be a reasonable fear, it must be judged from a subjective view focusing only on a plaintiff. The test is whether a plaintiff's fear is such that a reasonable person would have in these circumstances. Contrary to defendants' contention, the reasonable person standard is an "external and objective [standard], rather than the individual judgment, good or bad, of the particular actor; and it must be, so far as possible, the same for all persons". Prosser and Keeton on Torts § 32 at 173–74 (5th ed. 1984).

I find no proper ground for departing from the Court's previous practice with respect to this testimony.

## II. DR. BARRY CASTLEMAN

■ Defendants also object to testimony by Dr. Barry Castleman. He holds a Master's degree in Environmental Engineering from Johns Hopkins University granted in 1972 based on a thesis on the subject: Asbestos: Effects on Health. He also holds a Doctor of Science degree granted by Johns Hopkins School of Hygiene and Public Health in 1985 based on a thesis entitled Asbestos: An Historical Case Study of Corporate Response to an Industrial Health Hazard.

He has expertise in the search for basic information in the field of environmental and industrial health matters and in analyzing, correlating and summarizing such information. In that field he serves as an historian. His book entitled *Asbestos: Medical and Legal Aspects* (1984) was cited by the Delaware Supreme Court as a "learned treatise" and quoted in *Nicolet, Inc. v. Nutt,* Del.Supr., 525 A.2d 146, 148–49 (1987).

Based on his testimony in prior trials in this Court, he will testify to information which he has developed from his research of a vast number of documents from sources normally utilized in such research.

The parties have had full opportunity to examine him as to his sources of information in this litigation and other cases in this State, as well as in cases in other jurisdictions.

His testimony as an expert within the field described above is permissible under Rule 702 of the Delaware Uniform Rules of Evidence. In addition, his testimony as an historian in the field of industrial health is permissible under Rule 1006 of the same Rules.

Defendants' motion to exclude Dr. Castleman from testifying is denied.

## III. MR. FRANK ZOLFO

■ Defendants also seek to exclude proffered testimony of Mr. Frank Zolfo. According to defendants, based on plaintiffs' answers to interrogatories, this witness is to testify as an expert on the type of punitive damages award which would have a significant impact on defendants' operations "in order to get the attention of the Board of Directors and stockholders," and as to the profitability of the asbestos industry in general and the profitability of each defendant in particular on the issue of compensatory and punitive damages.

Defendants oppose this testimony on the ground that this testimony is an effort to suggest to the jury the amount it should award which is forbidden in this State, and that it is unduly prejudicial because it brings to the jury's attention defendants' profitability in connection with compensatory damages, which is forbidden in this State.

The Delaware Supreme Court has barred efforts by parties and their counsel from suggesting an amount which the jury

should award or from suggesting a formula for determining an award for unliquidated damages. *Henne v. Balick,* Del. Supr., 146 A.2d 394 (1958); *Cf. Aleardi v. Tiberi,* Del.Supr., 269 A.2d 404 (1970); *McNally v. Eckman,* Del.Supr., 466 A.2d 363 (1983). In furtherance of that policy, the civil rules of this Court forbid reference in pleadings to an amount of unliquidated damages being sought. Superior Court Civil Rule 9(g).

The Supreme Court has emphasized that punitive damages are not awarded to correct private wrongs, but are awarded based on societal policies. *Jardel Co., Inc. v. Hughes,* Del.Supr., 523 A.2d 518 (1987). *Jardel* also made clear that safeguards are required to assure that punitive damages will be awarded only in instances of egregious conduct. *Id.* Further, it held that the scienter test to be applied in considering punitive damages is much higher than in the case of compensatory damages. *Id.* In view of this restrictive approach to an award of punitive damages, the Court should not permit expansion of the area of testimony to accept expert testimony by suggesting the minimum amount of award which would be required to accomplish the objectives of punitive damages. Plaintiffs have cited no authority supporting their position and the Court has found none.

Experience of this Court in asbestos claim cases has not indicated that from plaintiffs' standpoint the jurors have been unable to understand the concept of punitive damages as defined by the Court's instructions. The amount of the punitive damages awards in the two trials which involved that issue have resulted in awards of $75 million and $22 million. The punitive damage award in the first instance was at least fifty times the compensatory damage award and the second award was more than twenty times the defendant's annual net earnings, twenty percent of the total net assets of the defendant. The proffered testimony can only have the effect of inducing higher punitive damages awards. I note that the amount of the only remaining punitive damages award has been challenged.

The size of punitive damages awarded in a single case where damage claims in other jurisdictions exist against the same defendant for the same or similar wrongdoing has been considered in various law journal articles. Punitive damages are not awarded to compensate for injury or damages suffered by a plaintiff. Rather, they are a penalty imposed upon a wrongdoer as a deterrant against subsequent similar conduct by the defendant or anyone else who might be so inclined. Since the focus in the case of punitive damages is upon the defendant, consideration must be given to the deterrence resulting from the current and prospective suits against defendant and not merely from the current suit alone. Owens, *Punitive Damages in Product Liability Litigation,* 74 Mich.L.Rev. 1257, 1319 (1976); Seltzer, *Punitive Damages in Mass Tort Litigation: Addressing the Problems of Fairness, Efficiency and Control,* 52 Fordham L.Rev. 37, (1983); Trangsrud, *Joinder Alternatives in Mass Tort Litigation,* 70 Cornell L.Rev. 779 (1985); Note, *Mass Liability and Punitive Damages Overkill,* 30 Hastings L.J. 1797 (1979); Mallor & Roberts, *Punitive Damages: Toward a Principled Approach,* 31 Hastings L.J. 639 (1980).

A theme which runs through any discussion of punitive damages is that the measure of punishment to be imposed should take into consideration the total punishment which the offending party will be called upon to bear. Therefore, in a situation such as asbestos claims resulting from exposure to a product which was widely used, the Court must give due consideration to the existence of other similar claims involving the same defendant. Several hundred such claims have been filed in this Court—and it is reported that many thousand such claims have been filed in courts throughout this country involving essentially the same defendants.

The Court must consider the total economic impact of these claims both from the standpoint of compensatory damages and of potential punitive damages. Clearly, it would create an injustice to the many claims for compensatory damages to deprive those claimants of the opportunity to recover for their actual damages by encouraging large punitive damage awards in

earlier trials, thereby draining off funds which would otherwise be available for compensating other claimants for actual injuries.

Plaintiffs' proposal to introduce testimony to show the quantum of damages which would be required to cause a change in corporate policy when presented in relation to this one case without recognition of the many other existing claims would provide a strong distortion which could not but compound the condition which the scholars have criticized.

The proffered testimony of Mr. Zolfo will not be permitted because it would violate this Court's prohibition against suggesting a figure which a jury should award and also because it would distort the punitive damages considerations before the jury and ignore the defendants' potential liability to other claimants.

In summary, defendants' motion to bar testimony of Dr. Joseph Wagoner and Dr. Barry Castleman is DENIED. Defendants' motion to bar testimony of Mr. Frank Zolfo is GRANTED.