DeWine, J.
*176 {¶ 1} To recover on a claim for asbestos-related injuries, a plaintiff must show that exposure to a particular defendant's product was a "substantial factor" in causing her asbestos-related injuries. The primary question here is whether the "substantial factor" requirement may be met through a "cumulative-exposure theory," which postulates that every nonminimal exposure to asbestos is a substantial factor in causing mesothelioma. We conclude that the cumulative-exposure theory is inconsistent with the test for causation set forth in R.C. 2307.96 and therefore not a sufficient basis for finding that a defendant's conduct was a substantial factor in causing an asbestos-related disease.
{¶ 2} The court of appeals held otherwise, so we reverse its judgment. And because the evidence presented in this case was not sufficient to show that exposure to asbestos from the manufacturer's product was a substantial factor in the causing the injury, we enter judgment for the manufacturer.
I. Background
{¶ 3} Kathleen Schwartz died from mesothelioma, a disease almost always *479 caused by breathing asbestos fibers. Kathleen's exposure to asbestos came largely through her father, who worked as an electrician. Growing up in the family home, Kathleen was exposed to asbestos fibers from her father's work clothes, which she often helped launder. In addition, on occasion during that period, her father installed new brakes in the family cars. The brakes, which contained asbestos, were manufactured by Bendix Corporation.
{¶ 4} Following Kathleen's death, Mark Schwartz ("Schwartz"), Kathleen's husband, filed a lawsuit against a number of defendants. Eventually, the case proceeded to trial against only one-Honeywell International, Inc., the successor-in-interest to Bendix. To succeed on his claim against Honeywell, Schwartz had to show that Kathleen had been exposed to asbestos from the brakes and that that exposure was a substantial factor in her contracting mesothelioma. R.C. 2307.96. The issue at trial was-and here on appeal is-whether Kathleen's exposure to asbestos from Bendix brake products was a substantial factor in causing her mesothelioma.
*177 {¶ 5} During the jury trial, Schwartz presented testimony from Kathleen's father and mother about how Kathleen may have been exposed to asbestos dust from her father's brake work and from his occupation as an electrician. Kathleen's exposure to asbestos from Bendix products was through her father's changing of the brakes in the family cars-something that occurred five to ten times in the garage of the family home during the 18 years Kathleen lived there. Kathleen and her siblings used the garage to access the backyard, where they would play. Her father testified that the dust from changing the brakes would remain on his clothes and that he would play with the children afterwards without changing those clothes. Kathleen's mother described how Kathleen would help do the family's laundry, which may have included the clothes her father had worn while changing brakes. But there was no specific evidence presented that Kathleen helped wash those clothes.
{¶ 6} Kathleen was also exposed to asbestos from other manufacturers' products by virtue of her father's full-time employment as an electrician. Her father testified that he was regularly exposed to "clouds of asbestos dust" while at work. He worked with products containing asbestos almost every work day. He would drive the family car home from work, pick up Kathleen from school, and play with his children without changing his clothes. And Kathleen's mother stated in her affidavit that Kathleen helped wash her father's work clothes.
{¶ 7} Dr. Carlos Bedrossian, a pathologist, testified as Schwartz's expert on causation. According to Dr. Bedrossian, there is no known threshold of asbestos exposure "at which mesothelioma will not occur." He opined that Kathleen's exposures to Bendix brakes and to asbestos dust brought home from her father's electrician job were both contributing factors to her "total cumulative dose" of asbestos exposure. He explained that the exposures that contributed to this cumulative exposure were "significant meaning above background" and did not include "the elusive background level of asbestos" in ambient air. Thus, according to Dr. Bedrossian, Kathleen's "cumulative" exposure, including her exposure to asbestos from the Bendix brakes, "was the cause of her mesothelioma."
{¶ 8} At the conclusion of Schwartz's case and again at the close of the evidence, Honeywell moved for a directed verdict, arguing that Schwartz had failed to demonstrate that Kathleen's exposure to asbestos from Bendix brakes was a substantial factor in causing her disease. The trial *480 court denied Honeywell's motion on both occasions. The jury ultimately found that Honeywell was 5 percent responsible for Kathleen's injuries, and the court entered judgment against Honeywell in the amount of $1,011,639.92.
{¶ 9} Honeywell appealed, again arguing that Schwartz had presented insufficient evidence that Kathleen's exposure to asbestos from the Bendix brakes was a substantial factor in causing her mesothelioma. The Eighth District Court of *178 Appeals noted the expert testimony that Kathleen's "cumulative" exposure "was the cause of her mesothelioma" and found the expert testimony to be "based on reliable scientific evidence." 2016-Ohio-3175, 66 N.E.3d 118, ¶ 48. Considering the expert testimony and the other evidence introduced, the court concluded that reasonable minds could have found in favor of Schwartz on the issue of causation and affirmed the trial court's denial of Honeywell's motion for a directed verdict.
{¶ 10} We accepted Honeywell's discretionary appeal on the following proposition of law: "A theory of causation based only upon cumulative exposure to various asbestos-containing products is insufficient to demonstrate that a particular defendant's product was a 'substantial factor' under R.C. 2307.96." See 148 Ohio St.3d 1442, 2017-Ohio-1427, 72 N.E.3d 656.
II. Causation and R.C. 2307.96
{¶ 11} The crux of Honeywell's argument is that Schwartz's evidence showing that Kathleen's exposure to asbestos from Bendix brakes contributed to her cumulative exposure to asbestos did not satisfy the substantial-factor causation requirement set forth in R.C. 2307.96. To understand the statutory causation requirements for asbestos-exposure claims, some background on the statute is helpful.
{¶ 12} Before enactment of R.C. 2307.96, Horton v. Harwick Chem. Corp. , 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), governed multidefendant asbestos claims. In Horton , the court held that a plaintiff alleging asbestos exposure had to show that she had been exposed to asbestos from each defendant's product and that exposure to asbestos from each defendant's product was a "substantial factor" in causing her injury. Id. at paragraph one of the syllabus. The Horton court also considered whether Ohio should adopt the standard for substantial causation developed in Lohrmann v. Pittsburgh Corning Corp. , 782 F.2d 1156, 1162-1163 (4th Cir.1986). Under the Lohrmann test, to survive summary judgment, a plaintiff must present evidence "of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Id. This manner-frequency-proximity test had been "embraced in practically every other jurisdiction which ha[d] reviewed asbestos cases." Horton at 691, 653 N.E.2d 1196 (Wright, J., concurring in part and dissenting in part). Nonetheless, the court rejected Lohrmann 's manner-frequency-proximity test, concluding that it "casts judges in an inappropriate role," is "overly burdensome" for plaintiffs, and is "unnecessary." Id. at 683, 653 N.E.2d 1196.
{¶ 13} The legislature ultimately disagreed and nine years after Horton , stepped in to adopt the Lohrmann test and "establish specific factors" to be considered in determining whether exposure to asbestos from a particular defendant's product was a substantial factor in causing a plaintiff's asbestos-related disease. Am.Sub.H.B. No. 292, Section 5, 150 Ohio Laws, Part III, 3970, *179 3992. To establish causation under R.C. 2307.96, a plaintiff must prove that "the conduct of that particular defendant was a substantial factor in causing the injury or loss." R.C. 2307.96(A). The burden rests with the *481 plaintiff to prove that she was exposed to asbestos "manufactured, supplied, installed, or used by the defendant" and that the "exposure to the defendant's asbestos was a substantial factor in causing the plaintiff's injury or loss." R.C. 2307.96(B). To determine whether "exposure to a particular defendant's asbestos was a substantial factor," the trier of fact is required to consider the manner, proximity, and frequency and length of the plaintiff's exposure to the asbestos. Id. In the uncodified portion of the enactment, the legislature explained, "Where specific evidence of frequency of exposure, proximity and length of exposure to a particular defendant's asbestos is lacking, summary judgment is appropriate in tort actions involving asbestos because such a plaintiff lacks any evidence of an essential element necessary to prevail." 150 Ohio Laws, Part III, at 3993.
{¶ 14} Thus, in R.C. 2307.96, the legislature made clear that in asbestos cases, there must be a determination whether the conduct of each "particular defendant" was a substantial factor in causing the plaintiff's injury and that this determination must be based on specific evidence of the manner, proximity, frequency, and length of exposure. Beyond that, however, the legislature did not specifically define "substantial factor."
{¶ 15} Having examined the statutory scheme, we turn to the case before us.
III. Cumulative-Exposure Causation Is Contrary to R.C. 2307.96
{¶ 16} Schwartz's causation expert, Dr. Bedrossian, did not testify that Kathleen's exposure to asbestos fibers from Bendix brakes was a substantial factor in causing her disease. When asked whether Kathleen's exposures to Bendix products "were substantial, significant and contributing factors" leading to her mesothelioma, Dr. Bedrossian replied, "[T]hey contributed to her cumulative exposures to asbestos fibers which ultimately was the cause of her mesothelioma."
{¶ 17} Dr. Bedrossian's theory was that any nonminimal exposure could be considered causative because it contributed to the cumulative exposure. Underlying the cumulative-exposure theory are two predicates. First, as he testified, there is no known threshold of asbestos exposure "at which mesothelioma will not occur." Second, "it is impossible to determine which particular exposure to carcinogens, if any, caused an illness. In other words, * * * the cumulative exposure theory does not rely upon any particular dose or exposure to asbestos, but rather all exposures contribute to a cumulative dose." Krik v. Exxon Mobil Corp. , 870 F.3d 669, 677 (7th Cir.2017).
*180 {¶ 18} This theory is incompatible with the plain language of R.C. 2307.96. The statute requires an individualized determination for each defendant: there must be a finding that the conduct of a "particular defendant was a substantial factor" in causing the plaintiff's disease. R.C. 2307.96(A). But the cumulative-exposure theory examines defendants in the aggregate: it says that because the cumulative dose was responsible, any defendant that contributed to that cumulative dose was a substantial factor. It is impossible to reconcile a statutory scheme that requires an individualized finding of substantial causation for each defendant with a theory that says every defendant that contributed to the overall exposure is a substantial cause.
{¶ 19} The cumulative-exposure theory is also at odds with the statutory requirement that substantial causation be measured based on *482 the manner, proximity, length, and duration of exposure. In saying that all nonminimal exposures count, Dr. Bedrossian's theory completely disregards the manner, proximity, length, and duration of exposure. As one court put it, to say that any nonminimal exposure is sufficient is "irreconcilable with the rule requiring at least some quantification or means of assessing the amount, duration, and frequency of exposure to determine whether exposure was sufficient to be found a contributing cause of the disease." (Emphasis sic.) In re New York City Asbestos Litigation , 148 A.D.3d 233, 239, 48 N.Y.S.3d 365 (2017).
{¶ 20} Indeed, a major failing of the cumulative-exposure theory is that it does not consider the relationship that different exposures may have to the overall dose to which an individual is exposed. The Second Restatement identifies as one consideration in determining whether an actor's conduct is a substantial factor "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." 2 Restatement of the Law 2d, Torts, Section 433, at 432 (1965). When causation is premised on the total cumulative exposure, a single exposure or set of exposures cannot be "considered a 'substantial cause' of the disease unless that exposure or set of exposures had a substantial impact on the total cumulative exposure." (Emphasis sic.) Haskins v. 3M Co. , D.S.C. Nos. 2:15-cv-02086-DCN and 3:15-cv-02123-DCN, 2017 WL 3118017, *7 (July 21, 2017).
{¶ 21} There are other problems with the cumulative-exposure theory beyond its incompatibility with the statutory scheme. Dr. Bedrossian testified that he considered only nonminimal exposures to be causative. But even minimal exposures contribute to one's cumulative dose. In a theory that starts with the premise that the total cumulative dose causes the disease, there is no rational reason to exclude even minimal exposures, because they also contribute to the cumulative dose. Indeed, a set of minimal doses may have a bigger cumulative impact than a single nonminimal dose. See *181 Bostic v. Georgia-Pacific Corp. , 439 S.W.3d 332, 341 (Tex.2014). Presumably, Dr. Bedrossian excludes minimal exposures not because they don't contribute to the total cumulative dose but because he doesn't think that it would be fair to include them. But this demonstrates the flaw in his theory: like the substantial-factor requirement, he is drawing a line based on a certain level of exposure; he is simply choosing to draw the line at a different place than the substantial-factor requirement.
{¶ 22} Our task in evaluating the cumulative-exposure theory is fairly straightforward because we are guided by a statute that explicitly requires a showing for a "particular defendant" based on the manner, frequency, proximity, and duration of exposure. But even without the same statutory guidance, courts have rejected the cumulative-exposure theory. Noting that the theory does not take into account other exposures that might have caused the harm, the United States Court of Appeals for the Sixth Circuit rejected the theory because "it would render the substantial factor test 'meaningless.' " Martin v. Cincinnati Gas & Elec. Co. , 561 F.3d 439, 443 (6th Cir.2009), quoting Lindstrom v. A-C Prod. Liab. Trust , 424 F.3d 488, 493 (6th Cir.2005). The Ninth Circuit expressed similar concerns: "This is precisely the sort of unbounded liability that the substantial factor test was developed to limit." McIndoe v. Huntington Ingalls, Inc. , 817 F.3d 1170, 1177 (9th Cir.2016). Numerous other courts are in accord. See, e.g. , Scapa Dryer Fabrics, Inc. v. Knight , 299 Ga. 286, 290-291, 788 S.E.2d 421 (2016) ; Holcomb v. Georgia Pacific, L.L.C. , 128 Nev. 614, 628-629, 289 P.3d 188 (2012) ; Bostic at 339.
{¶ 23} In enacting R.C. 2307.96, the General Assembly demanded a showing *483 greater than an undefined contribution to a total cumulative exposure that resulted in injury. Requiring only that the plaintiff demonstrate that the exposure to asbestos from the defendant's product was nonminimal and contributed to the plaintiff's total cumulative exposure is inconsistent with the statutory requirement that the plaintiff prove-based on the manner, proximity, frequency, and length of exposure-that a particular defendant's conduct was a substantial factor in causing the injury.
{¶ 24} Thus, we agree with the proposition of law set forth by Honeywell and hold that a theory of causation based only on cumulative exposure to various asbestos-containing products is insufficient to demonstrate that exposure to asbestos from a particular defendant's product was a "substantial factor" under R.C. 2307.96.
IV. Exposure to Asbestos from Bendix Products Was Not a Substantial Factor in Causing Kathleen Schwartz's Mesothelioma
{¶ 25} We consider then whether Schwartz presented sufficient evidence that Kathleen's exposure to the Bendix brakes was a substantial factor in her *182 contracting mesothelioma. Applying R.C. 2307.96's manner, proximity, frequency, and length factors, we conclude that he did not.
{¶ 26} As discussed above, Schwartz's causation expert did not opine that Kathleen's exposure to Bendix brakes was a substantial factor in causing her disease, and the cumulative-exposure theory that he did rely on is an insufficient basis on which to find substantial causation. The other evidence offered about Kathleen's exposure to Bendix products was likewise insufficient to establish causation under R.C. 2307.96.
{¶ 27} Start with the manner of exposure. The only evidence relating to the manner of exposure was that Kathleen might have been exposed to asbestos fibers from Bendix products when she walked through the garage during a brake job or had contact with her father's clothes after one. There was evidence that such exposures were likely to have occurred based on what "typically" happened, but there was no specific evidence of exposure in connection with any particular brake job. Similarly, there was only limited evidence of proximity. There was no evidence that Kathleen ever assisted in any brake job or remained next to her father while he performed a brake job. The only evidence of proximity was her history of walking through the garage and of having contact with her father's clothes. Most significantly, however, the evidence of the frequency and length of exposure was quite limited. Schwartz did not show that Kathleen was exposed to asbestos from Bendix products "on a regular basis over some extended period of time," Lohrmann , 782 F.2d at 1162-1163. Rather, he merely showed that Kathleen could have been exposed to asbestos from Bendix products when her father installed Bendix brakes on five to ten occasions.
{¶ 28} We also must consider Kathleen's exposures to asbestos from Bendix brakes in the context of her exposures to asbestos from the products of other manufacturers. Her father came into contact with products containing asbestos nearly every day he worked-five to seven days a week, 10 to 12 hours a day-for 33 years. Without having changed out of his work clothes, he would pick Kathleen up from school and take her home in the family car. He would then be around Kathleen at home-again without having changed his clothes. And Kathleen assisted her mother in the family's laundry-which included Kathleen's father's work clothes. These regular exposures that Kathleen received as a result of her father's years of working as an electrician *484 with products containing asbestos contrasts strongly with the limited and irregular exposures that Kathleen might have had as a result of her father's occasional brake jobs.
{¶ 29} Thus, when we consider the manner, proximity, frequency, and duration of Katherine's exposures to asbestos from Bendix products in relation to these "other factors which contribute in producing the harm," 2 Restatement of the Law 2d, Torts, Section 433, at 432, we cannot conclude that Schwartz established *183 that Kathleen's exposure to asbestos from Bendix products was a substantial factor in causing her mesothelioma.
V. Conclusion
{¶ 30} Under the test for causation set forth in R.C. 2307.96, the motion for a directed verdict made by Honeywell International, Inc., should have been granted. Therefore, the judgment of the court of appeals is reversed.
Judgment reversed.
O'Connor, C.J., and O'Donnell, Kennedy, and French, JJ., concur.
Fischer, J., concurs in judgment only, with an opinion.
O'Neill, J., dissents, with an opinion.
Fischer, J., concurring in judgment only.
{¶ 31} Although I agree with the majority that the trial court should have granted the motion for a directed verdict made by appellant, Honeywell International, Inc., I believe that the majority's analysis does not sufficiently clarify how courts should consider causation in cases like this in the future. I accordingly concur only in the court's judgment reversing the judgment of the Eighth District Court of Appeals.
{¶ 32} While courts must follow R.C. 2307.96 and triers of fact must consider the four factors set forth in R.C. 2307.96(B), the statute provides no definition for the term "substantial factor." This lack of clarity opens the door to inconsistent application of R.C. 2307.96 and gave rise to this appeal.
{¶ 33} I agree with the majority that R.C. 2307.96's substantial-factor requirement is not satisfied if the plaintiff shows merely that the exposure was nonminimal or "above background" level and that it contributed to the plaintiff's total cumulative exposure to asbestos. But the majority opinion is unclear about what distinguishes an exposure that constitutes a substantial factor in causing a plaintiff's injuries from an exposure that is an insubstantial factor.
{¶ 34} Ultimately, appellee, Mark Schwartz, failed to offer testimony that conclusively linked Kathleen Schwartz's exposures to asbestos from brakes manufactured by Bendix Corporation to her mesothelioma ; however, I believe that this is a close case that highlights the need for a more precise definition of the term "substantial factor" as used in R.C. 2307.96. Given the ambiguous nature of the term and the lack of guidance in the majority opinion, I encourage the *184 General Assembly to consider amending the statute to provide clearer direction to courts applying R.C. 2307.96.
O'Neill, J., dissenting.
{¶ 35} Respectfully, I must dissent.
{¶ 36} I would conclude that the evidence presented at trial was sufficient to defeat the motion for a directed verdict made by appellant, Honeywell International, Inc. Dr. Carlos Bedrossian testified that there is no known threshold of asbestos exposure "at which mesothelioma will not occur." Members of the decedent's family testified that the decedent was exposed to *485 asbestos dust originating in brakes manufactured by Bendix Corporation. The witnesses were able to relate the number of times Bendix brakes were changed, the period of time over which these exposures occurred, and the ways in which the decedent was likely exposed. If every exposure to asbestos can independently cause mesothelioma, surely exposures like the ones described by the witnesses in this case could be a substantial factor in causing an individual to later develop the illness.
{¶ 37} But regardless of the every-exposure theory, the testimony offered was sufficient for the trial court to deny the motion for a directed verdict. The majority may believe that the evidence of manner, proximity, frequency, and length of exposure presented in the trial court was not "specific," was "limited," or was "quite limited." Majority opinion at ¶ 27. Yet, there was evidence relevant to the statutory factors. Ultimately, a determination of the weight to give that evidence is for the jury-not for today's majority-to make based on the testimony it hears about the circumstances of the exposures. We are categorically the wrong body to consider the weight of the evidence, and our review for the sufficiency of the evidence supporting a civil verdict ought to be more circumspect. Chem. Bank of New York v. Neman , 52 Ohio St.3d 204, 207-208, 556 N.E.2d 490 (1990) ; see R.C. 2503.43. We must decide whether the jury, having been presented with the testimony in the record, could have reasonably decided that the decedent's exposure to asbestos from Bendix brakes was a substantial factor in causing her mesothelioma. In doing so, we are required to "constru[e] the evidence most strongly in favor of the party against whom the motion is directed." Civ.R. 50(A)(4).
{¶ 38} This court must always be reluctant to overturn verdicts returned by a jury. Our system of civil justice grew in fits and starts over centuries because the dispassionate justice of an impartial jury has always been better for society as a whole than vengeful acts of self-help. We do not need to tip the scales and risk revolt from the rule of law.
{¶ 39} Justice having been done in this matter by the lower courts, I dissent.