800 A.2d 722

**GEORGIA–PACIFIC CORPORATION**

v.

**Lisa J. PRANSKY et al.**

**No. 107, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 11, 2002.

Reconsideration Denied July 17, 2002.

John Parker Sweeney (T. Sky Woodward, E. Benjamin Alliker and Angela N. Whittaker of Miles & Stockbridge, P.C., Baltimore; R. Thomas Radcliffe, Jr., Church, Loker, Radcliffe & Silver, P.A., Baltimore; Dan K. Webb, Winston & Strawn, Chicago, IL), all on brief, for petitioner.

Sara Sadler Turnipseed, Charles E. Watkins, III, of Nelson Millins Riley & Scarborough, L.L.P., Atlanta, GA, on brief for petitioner.

John E. Griffith, Jr., Piper, Marbury, Rudnick & Wolfe LLP, Baltimore, Brief of amicus curiae Maryland Defense Council filed on behalf of Petitioner.

Melvin J. Sykes, Baltimore; Stephen W. Wilson, Michael B. Leh of Greitzer & Locks, Philadelphia, PA; Stephen J. Nolan, Nolan, Plumhoff & Williams, Chtd., Towson, all on brief, for respondents.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

After concluding that Lisa Pransky contracted mesothelioma from her exposure to an asbestos-containing joint compound manufactured and distributed by petitioner, Georgia–Pacific Corporation, a jury in the Circuit Court for Montgomery County awarded Ms. Pransky and her husband damages of $9,188,000. Of that sum, $4,800,000 was for Ms. Pransky's non-economic damages. The Court of Special Appeals affirmed the judgment entered upon that verdict.

We granted *certiorari* to consider whether (1) under the test laid down in *Eagle–Picher Indus. v. Balbos,* 326 Md. 179, 604 A.2d 445 (1992) (*Balbos* ), sufficient evidence was presented to show that Ms. Pransky's exposure to petitioner's product was a substantial factor in causing her mesothelioma, and (2) if so, sufficient evidence was presented to show that her cause of action arose prior to July 1, 1986—the effective date of a statutory cap on the amount of non-economic damages that may be awarded in a personal injury action. We shall affirm the judgment of the Court of Special Appeals.

### *Substantial Factor Evidence*

That Ms. Pransky had mesothelioma, from which she died at the age of 34 shortly after trial, is not in dispute. She attributed the disease to her exposure 25 years earlier to the asbestos-containing joint compound material, manufactured and distributed by petitioner, that her father used in the renovation of the basement of their home. Shortly after the family moved into the home in 1972, Lisa's father, a heating and air conditioning contractor, converted the unfinished basement into a recreation room. With occasional help from a carpenter, he did the work himself, in the evenings and on weekends. It involved putting up studs along the walls and ceiling, nailing drywall to the studs, taping the seams, applying petitioner's compound to the tape, and sanding the compound to get a smooth seam. He also applied the compound to the ceiling to create a stippled effect.

Lisa did not use the compound itself—she was only eight years old when the work was done. She was frequently in the basement while her father was working, however, either watching him or helping her mother with the laundry. Evidence was presented that the sanding created a lot of dust, that Lisa was exposed to that dust when she was in the basement, and that the dust was picked up by the ventilation system and spread throughout the house. Following completion of the work, Lisa played in the basement and was further exposed to dust occasionally emanating from the compound on the ceiling for about another 10 years, until she left the home to go to college.

These basic facts were not in substantial dispute. The issue was whether they sufficed to show that Lisa's mesothelioma was caused by that exposure. Petitioner produced a great deal of medical evidence to the effect that Lisa's mesothelioma was not asbestos-related at all and that, if it was, it emanated from the unusually high ambient levels of asbestos in her neighborhood, rather than from her limited exposure to petitioner's joint compound. That evidence, if credited by the jury, would have been more than sufficient to justify a verdict in favor of petitioner. The jury apparently was not persuaded by that evidence, however, for it found otherwise. On appeal, we must view the evidence, and the inferences reasonably deducible from the evidence, in a light most favorable to the Pranskys, looking only to whether, viewed in that manner, it was legally sufficient to create a triable issue. *See Houston v. Safeway Stores, Inc.*, 346 Md. 503, 521, 697 A.2d 851, 859 (1997) (observing that the standard for appellate review is whether there is "any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, . . ."); *Impala Platinum Ltd. v. Impala Sales, Inc.*, 283 Md. 296, 328, 389 A.2d 887, 906 (1978) (same); *Owens–Corning v. Walatka*, 125 Md.App. 313, 342, 725 A.2d 579, 593 (1999) (same).

Because Lisa did not handle the joint compound herself, she is to be regarded as a "bystander." We dealt with the issue of causation, with respect to a bystander, in *Balbos*. The plain-

tiffs there, Balbos and Knuckles, both worked in a shipyard during World War II. Although they did not handle asbestos products directly, they each worked in the engine rooms of ships—large but confined areas—where they were exposed to "great quantities" of Eagle–Picher's asbestos products. *Balbos, supra,* 326 Md. at 213, 604 A.2d at 461. We concluded that the evidence of that exposure sufficed to establish causation with respect to Eagle–Picher.

One of the plaintiffs, Knuckles, also asserted liability against another defendant, Porter–Hayden, based on evidence that it sold asbestos products that were used in other parts of the shipyard. Knuckles sought to connect his mesothelioma to the Porter–Hayden product under the "fiber drift theory," which assumes that asbestos fibers may become airborne or re-entrained and thus be carried from their source to other areas, and that, as a result, anyone present in the facility where the product exists is entitled to have the jury determine causation with respect to that product. *Id.* at 216–17, 604 A.2d at 463. We rejected that theory as so attenuating causation-in-fact as to be "inconsistent with the requirement of Maryland law that an actor's negligence be a substantial factor in causing the injury." *Id.* at 217, 604 A.2d at 463. The exposure must be more direct; the plaintiff must have been in or very near the presence of the asbestos-containing product and able to inhale fibers released from that product. In that regard, we stated:

"Whether the exposure of any given bystander to any particular supplier's product will be legally sufficient to permit a finding of substantial-factor causation is fact specific to each case. The finding involves the interrelationship between the use of a defendant's product at the workplace and the activities of the plaintiff at the workplace. This requires an understanding of the physical characteristics of the work place and of the relationship between the activities of the direct users of the product and the bystander plaintiff. [citation omitted]. Within that context, the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of a product, and the regularity of the

exposure of that plaintiff to the use of that product. [citations omitted]. 'In addition, trial courts must consider the evidence presented as to medical causation of the plaintiff's particular disease.' *Lockwood v. AC & S, Inc.,* 109 Wash.2d 235, 744 P.2d 605, 613 (1987)."

*Id.* at 210–11, 604 A.2d at 460.

■ The Pranskys, though insisting that the evidence they presented satisfies the *Balbos* test of frequent, proximate, and regular exposure, contend that the *Balbos* test has never been applied and should not apply in a non-occupational setting. They treat the *Balbos* test as one designed to test the reliability of *circumstantial* evidence of exposure, in the absence of *direct* evidence and contend that it has no relevance when exposure is established by *direct* evidence. We do not agree. The quoted statement from *Balbos* came in the context of our discussion of Balbos's and Knuckles's exposures to the Eagle–Picher product in the engine rooms, and the evidence of those exposures was direct, not circumstantial. We introduced that statement with the observation that "[n]either [plaintiff] in the cases before us worked directly with asbestos products; rather, they were bystanders," and we then went on to articulate a test for determining causation with respect to bystanders. *Id.* at 210, 604 A.2d at 460. The distinction was not between direct and circumstantial evidence, or between occupational and non-occupational exposure, but between those who actually handled the product and those who did not but were in the immediate vicinity. Nor do we see any legitimate basis for not applying the *Balbos* standards in any bystander situation. The need for reliable proof of causation is the same, whether the alleged exposure is in an occupational or non-occupational setting.

The jury in this case was instructed in full compliance with the *Balbos* standards. The court made clear that the burden was on the plaintiffs to show that exposure to petitioner's product was a substantial causative factor in bringing about Lisa's injuries and that, in determining that question, the jury was to consider "[t]he nature of the product, the frequency of

its use, the proximity in distance and time of the plaintiff to the use of the product and the regularity of the exposure of that plaintiff to ... the use of a product." The issue is only the sufficiency of the evidence to sustain liability under that standard; there is no indication that the jury was mis-instructed on the law.

We have already recounted the fact that Lisa was present in the basement during the several-month period that her father was working on the project and was exposed to dust emanating from his sanding of the compound, and that she continued to be exposed to the compound spread on the ceiling during the next ten years that she lived in the home. Testimony was presented that the compound contained about three percent chrysotile asbestos, that the sanding of that product releases significant amounts of asbestos fibers—more than the permissible exposure limit established by OSHA that was in effect in 1973—and that the dust not only remains in the air for a time but gets back into the air when swept or cleaned off of surfaces upon which it settles. Medical evidence was presented that (1) chrysotile asbestos is a carcinogen that causes mesothelioma, (2) mesothelioma may occur as the result of a brief, low-level, indirect exposure to asbestos, (3) the disease is much rarer in women than in men because fewer women were occupationally exposed to asbestos, (4) due to its latency, mesothelioma may constitute a major asbestos-related cancer hazard when the exposure begins in childhood (as it did with Lisa), and (5) the latency period for pleural mesothelioma, from first exposure to onset of symptoms, is 20 years or longer, which is consistent with Lisa's having been exposed in 1973 and developing symptoms in 1997. There was also evidence, intended, no doubt, to rebut inferences that petitioner sought to draw from the fact that there was no evidence of asbestosis or pleural plaques in Lisa's lungs, that it is not necessary for asbestos-related mesothelioma to be accompanied by that disease or that condition.

This evidence, if credited by the jury, was clearly sufficient to establish that Lisa's exposure to the dust emanating from

petitioner's asbestos-containing joint compound was a substantial factor in causing her mesothelioma and thus presented a triable issue for the jury to resolve.

### *Application of the Cap on Non–Economic Damages*

The second question presented by petitioner is whether Ms. Pransky presented sufficient evidence to establish that her cause of action arose prior to July 1, 1986, the effective date of the statutory limitation on the amount of non-economic damages that can be awarded in a personal injury action. *See* Maryland Code, § 11–108(b)(1) of the Courts and Judicial Proceedings Article. We just dealt with this issue in *John Crane, Inc. v. Scribner,* 369 Md. 369, 800 A.2d 727 (2002). We held in that case that, in an action for personal injury founded upon the plaintiff's exposure to asbestos, where the injury sued upon and established is a cancer or other disease that develops over time, the cause of action arises, for purposes of § 11–108(b)(1), when the plaintiff first inhales asbestos fibers that caused cellular changes leading to the disease. We held further that, in making that determination, the court may look initially to when the plaintiff's *last* exposure to asbestos occurred and that, if that last exposure undisputedly was prior to July 1, 1986, it must conclude, as a matter of law, that the limitation in § 11–108(b)(1) does not apply. That clearly was the situation here. Ms. Pransky left the home, and thus the exposure, prior to July, 1986. The trial court's conclusion that the statutory cap did not apply was correct.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.